# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18 CV 136

| | |
|---|---|
| ANGELA L. THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ROBERT WILKIE,[1] ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Partial Motion to Dismiss[2] (Doc. 13) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, the undersigned recommends that Defendant's Partial Motion to Dismiss be granted.

## I. Procedural Background

On July 12, 2017, Plaintiff, proceeding *pro se*, initiated this action in the United States District Court for the Southern District of Georgia. See Compl. (Doc. 1). At the same time, Plaintiff filed a motion to proceed *in forma pauperis*, which was granted. See

---

[1] Plaintiff named David J. Shulkin, Secretary, Department of Veterans Affairs, as Defendant. See Compl. (Doc.1), Am. Compl. (Doc. 4). Robert Wilkie succeeded Shulkin as the Acting Secretary of Veterans Affairs, effective March 28, 2018.

[2] While the Motion is styled as a "Motion to Dismiss," as discussed below, it does not seek dismissal of all of Plaintiff's claims, and therefore, it should be considered as being a partial motion to dismiss.

(Doc. 3).

On August 8, 2017, Plaintiff filed an Amended Complaint.  See (Doc. 4).  On April 20, 2018, Defendant filed the instant Motion to Dismiss or Transfer Venue (Doc. 13).  On May 10, 2018, Plaintiff filed an Opposition (Doc. 14).

On May 15, 2018, United States Magistrate Judge G. R. Smith deferred ruling on the Motion to Dismiss and granted the Motion to Change Venue, transferring the case to this Court.  See (Doc. 15).

On November 16, 2018, the undersigned directed the parties to submit a list of controlling authorities for courts within the Fourth Circuit.  See (Doc. 18).  Both parties complied.  See (Docs. 19, 22).

On December 14, 2018, Plaintiff filed a Motion to Appoint Counsel (Doc. 20), which was denied.  See (Doc. 23).

## II. Factual Background

While Plaintiff's Amended Complaint is not a picture of clarity, the facts as alleged, viewed in the light most favorable to Plaintiff, appear to be as follows:

On an unknown date, Plaintiff commenced employment with the Department of Veterans Affairs, Mid-Atlantic Consolidated Patient Account Center ("VA-MACPAC"), in Asheville, North Carolina, as a Program Support Assistant.  Am. Compl. (Doc. 4) ¶ 7.  During Plaintiff's employment, VA-MACPAC had approximately 500 employees, though less than 10% were black.  Id. ¶ 15.

On January 20, 2011, Plaintiff received notice that she was able to be considered for the position of Financial Administrative Assistant under vacancy announcement number

2

Case 1:18-cv-00136-MR-WCM     Document 27     Filed 02/22/19     Page 2 of 18

M – 730 – 008RRB – 11 (8 vacancies) ("Financial Administrative Assistant #1"). Plaintiff interviewed with Jim Glover ("Glover") in February 2011 but received notice on March 8, 2011 that she had not been selected. Plaintiff alleges that she was more qualified than the Hispanic and white applicants who were selected for these vacancies. Id. ¶ 16 (a).

On July 28, 2011, Plaintiff interviewed with Glover and Lesley Wright for the position of Supervisory Program Specialist (IV), GS – 301 – 07/09 under vacancy announcement OY484387BJG (two vacancies) ("Supervisory Program Specialist"). In mid-August 2011, Plaintiff was informed that Glover had filled one of the vacancies but had decided not to fill the second vacancy at the time. Id. ¶ 16 (b).

On October 4, 2011, Plaintiff applied for the position of Financial Administrative Assistant, under Vacancy Announcement Number OY534149JAS (four vacancies) ("Financial Administrative Assistant #2"). Id. ¶ 17. Plaintiff claims that white applicants were treated more favorably, including being given preferences during the panel scoring and being given inside information, which negatively impacted Plaintiff's chances of being interviewed. Id. ¶ 19.

On November 17, 2011, Plaintiff received notice that she was qualified for the position of Program Specialist (QA) GS – 301 – 09 under vacancy announcement number OYS19000BMK (one vacancy) ("Program Specialist"). In connection with her application for this position, Plaintiff was required to take an Excel test, which she contends was used to eliminate her from the selection process in favor of a white applicant.

In relation to her application for the Financial Administrative Assistant # 2 position, Plaintiff was given zeros in many qualification categories on an evaluation dated December

15, 2011, even though she had similar if not better qualifications than some of the white candidates. Id. ¶ 20.

On January 6, 2012, Plaintiff learned that a selection for the Program Specialist Position had been made at the end of December 2011 and that she had not been selected. Id. ¶ 16.

Beginning on January 9, 2012, Plaintiff had a series of communications with her union president, Terry Wyatt, and voiced concerns about racial discrimination. Id. ¶¶ 17, 22, 23.

On March 30, 2012, Plaintiff received an automated notice, which advised her that she was not selected for the Financial Administrative Assistant #2 position. Id. ¶ 17. The individuals ultimately selected to fill the Financial Administrative Assistant #2 vacancies could not be placed because there was negligence in the hiring practices. Id. ¶ 17. Three candidates were given "settlements" because of the erroneous hiring process, though Plaintiff was ignored. Id. ¶ 23. It appears that a second panel of applicants was assembled, though Plaintiff was not provided information in that regard. Id. ¶ 18.

Plaintiff alleges that, at all times, she performed her job competently and was awarded for good job performance and ethics until she began requesting information regarding her non-selection to the positions of Financial Administrative Assistant #1, Supervisory Program Specialist, and Program Specialist. Id. ¶ 16.

On April 9, 2012, Plaintiff made her "initial counseling contact." Id. ¶ 24. Neither counseling nor the alternative dispute resolution process resulted in a resolution. Id.

On May 15, 2012, Plaintiff filed a formal complaint of racial discrimination. Id. ¶

4

25.  This complaint was partially accepted for investigation on July 24, 2012.  Id. ¶ 26.

Plaintiff alleges that in retaliation for filing her EEO complaint, (1) her supervisor retracted a previous recommendation that Plaintiff be given a pay increase;  (2) other employees attempted to delay and later closed a FOIA request Plaintiff had submitted; (3) Director Victor Cruz and Robin Ball refused to acknowledge her retirement or give her a certificate upon her exit, as was done for other retirees; and (4) she was given a negative evaluation, which led to her non-selection for the Financial Administrative Assistant #2 vacancies.  Id. ¶¶ 20, 33.

On December 11, 2013, Plaintiff received an Order of Decision without a Hearing signed by Administrative Judge Mary M. Ryerse.  Id. ¶ 27.  Judge Ryerse ruled in favor of Defendant.  Id.

On January 29, 2014, Plaintiff filed an appeal of Judge Ryerse's order with the EEOC, Office of Federal Operations. Id. ¶ 28.

On February 27, 2014, the Office of Federal Operations sent a "Notice to Show Cause" to Defendant advising her to submit the entire complaint file within a specific time period or the Commission could draw an adverse inference.  Id. ¶ 29.

As of November 17, 2016, Defendant had failed to respond to the February 2014 "Notice to Comply."  Id.

On December 16, 2016, the Office of Federal Operations affirmed the Administrative Judge's decision. Id. ¶ 30.

On February 8, 2017, Plaintiff filed a timely Request for Reconsideration with the Office of Federal Operations.  Id. ¶ 31.

On May 18, 2017, the Office of Federal Operations denied Plaintiff's Request for Reconsideration. Id. ¶ 32.

## III. Legal Standards

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has subject matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). Where a defendant contends that a complaint fails to allege facts upon which the court can base subject matter jurisdiction, the court, as when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), assumes as true the factual allegations in the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction. Id.; Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). "[D]ismissal for lack of subject matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case." Beckworth v. Bizier, No. 3:12-CV-00512-MOC-DSC, 2013 WL 310065, at *1 n.1 (W.D.N.C. Jan. 25, 2013).

### B. Fed. R. Civ. P. 12(b)(6)

In a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the

6

Case 1:18-cv-00136-MR-WCM   Document 27   Filed 02/22/19   Page 6 of 18

plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

Claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Discussion

### A. Plaintiff's Claims

Pleadings filed by a *pro se* litigant, such as Plaintiff, are liberally construed and held to a less stringent standard than pleadings drafted by counsel. Erickson v. Pardus, 551 U.S. 89, 94 (2007). At the same time, "judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir.1993) (internal citation omitted).

Plaintiff's Amended Complaint, read liberally, appears to allege two categories of claims: (1) failure to hire/promote, and (2) retaliation. See Am. Compl. (Doc. 4). In particular, Plaintiff alleges that Defendant discriminated against her on account of her race in failing to hire or promote her with respect to the following positions: (a) Financial Administrative Assistant #1, (b) Supervisory Program Assistant, (c) Program Specialist, and (d) Financial Administrative Assistant #2. Defendant agrees with this reading. See Def's Mot. (Doc. 13) at 2 ("Specifically, she alleges she was discriminated against based on her race when she was not selected for (1) a Financial Administrative Assistant vacancy on or about March 8, 2011; (2) a Supervisory Program Specialist vacancy on or about August 18 or 19, 2011; (3) a Program Specialist vacancy, a decision she learned of on January 6, 2012; and (4) a second Financial Administrative Assistant vacancy on March 30, 2012.").

Plaintiff also contends that Defendant retaliated against her for filing her EEO complaint.

## B. Failure to Hire/Promote Claims

Defendant argues that Plaintiff has failed to exhaust her administrative remedies in connection with her non-selection for three of the four positions identified, and therefore, that her claims in relation to these positions should be dismissed. Def.'s Mot. (Doc. 13) at 6-8.

Prior to commencing an action under Title VII, a plaintiff must exhaust her administrative remedies. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006). "The administrative remedies available for federal employees are significantly broader" than the remedies available to employees in the private sector. Id. at 416; see 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a Title VII suit).

A federal employee who believes she has been discriminated against based on race must consult an EEO counselor in the employee's agency and attempt to resolve the dispute informally, prior to filing an EEO complaint. 29 C.F.R. § 1614.105(a). The employee must initiate contact with a counselor within 45 days of the date of the alleged discrimination or within 45 days of the effective date of the personnel action at issue. Id. § 1614.105(a)(1).

At the initial counseling session, the counselor must advise the employee in writing of her rights and responsibilities, which include the right to request a hearing or an immediate final decision after an investigation by the agency, election rights, and the right to file a notice of intent to sue. Id. § 1614.105(b)(1). The counselor must also advise the employee if the agency agrees to offer alternative dispute resolution in the case. Id.

9

§ 1614.105(b)(2).

If alternative dispute resolution is available and the employee elects to pursue it, the EEO counselor must have a "final interview" within 90 days of the initial session. Id. § 1614.105(d), (f). If the matter is not resolved by that time, the counselor will issue a notice to the employee giving her the right to file a formal complaint within the agency. Id. § 1614.105(d)-(f). Such a complaint must then be filed within 15 days. Id. § 1614.105(d).

The employee's formal complaint determines the scope of her right to file a subsequent federal lawsuit. Chacko v. Patuxent Inst., 429 F.3d 505, 508-09 (4th Cir. 2005). After the agency takes final action on the formal complaint, the aggrieved party has 90 days to initiate a civil action. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).

A plaintiff who has failed to plead a claim or abandons a claim during the administrative process has not exhausted her administrative remedies. See Austin v. Winter, 286 F. App'x 31, 35 (4th Cir. 2008). Similarly, a plaintiff who fails to comply with the applicable administrative procedures has failed to exhaust her administrative remedies and is generally barred from filing suit. Balas v. Huntington Ingalss Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013); see Jones v. Calvert Group, Ltd., 551 F.3d 297, 301 (4th Cir. 2009).

In the instant case, Plaintiff learned on or about March 8, 2011 that she was not selected for a Financial Administrative Assistant #1 vacancy, Am. Compl. ¶ 16.a, on August 18 or 19, 2011, that she was not selected for a Supervisory Program Specialist vacancy, id. ¶ 16.b, and on or about January 6, 2012 that she was not selected for a Program

10

Specialist vacancy, id. ¶ 16.c. Since the first step in the administrative process requires a plaintiff to initiate contact with a counselor within 45 days of the date of the matter that is alleged to have been discriminatory, 29 C.F.R. § 1614.105(a)(1), Plaintiff was required to contact a counselor by late April 2011 for the Financial Administrative Assistant #1 vacancy; by early October 2011 for the Supervisory Program Specialist vacancy; and by late February 2012 for the Program Specialist vacancy. Plaintiff, however, did not contact an EEO counselor until April 9, 2012. See Am. Compl. ¶ 24.

Consequently, Plaintiff failed to exhaust her administrative remedies for alleged discrimination arising from her non-selection for these three positions. Her failure-to-promote claims as to those positions should, therefore, be dismissed. See Carter v. United States, No. 5:16-CV-01265, 2016 WL 3033764, at *4 (S.D. W.Va. May 26, 2016) (dismissing plaintiff's Title VII claim for failure to exhaust where she did not initiate contact with an EEO counselor within 45 days of the date of the alleged discrimination).[3]

### C. Retaliation Claim

Plaintiff alleges that she suffered the following in retaliation for filing an EEO complaint alleging racial discrimination: (1) she was denied a pay increase; (2) the response to a FOIA request she submitted was delayed and improper; (3) she did not receive proper recognition for her retirement; and (4) she was given a negative evaluation, which led to

---

[3] Defendant does not argue that Plaintiff failed to exhaust her administrative remedies regarding her allegation that her non-selection for Financial Administrative Assistant #2 was racially discriminatory. See Def.'s Mot. (Doc. 13) ("The Court therefore should dismiss the failure-to-promote claims, except for Thomas's claim that she was not selected for the second Financial Administrative Assistant position[.]")(emphasis added).

her non-selection for the Financial Administrative Assistant #2 vacancies. Am. Compl. (Doc. 4) ¶¶ 20, 33. Defendant argues that Plaintiff has failed to state a claim for retaliation. Def.'s Mot. (Doc. 13) at 8.

To state a prima facie Title VII retaliation claim, a plaintiff must allege facts demonstrating the following: (1) he was engaged in protected activity; (2) his employer took adverse employment action against him; and (3) and there was a causal link between those events. Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. July 13, 2018) (citing Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015)); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).

The filing of an EEOC charge is a protected activity for purposes of the first element. 42 U.S.C. § 2000e-3(a).

An adverse employment action, as referenced by the second element, "is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks omitted). Such an action is something that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); see Harrison v. S.C. Dep't of Mental Health, 641 F. App'x 202, 207 (4th Cir. 2015) ("[I]f [a defendant] deprived [the plaintiff] of a raise given to all other similarly situated employees, then that would be a materially adverse employment action for purposes of Title VII's retaliation provision.") (internal quotation marks omitted); see also Scott v.

Teachers Ins. and Annuity Ass'n of America, No. 3:12-CV-00697-FDW-DCK, 2013 WL 2948315, at *5-*6 (W.D.N.C. June 14, 2013) (holding that the plaintiff's allegations her requests for transfer were denied and she received an inaccurate and poor performance review affecting her eligibility for a bonus or promotion, should an opportunity arise, were not adverse employment actions).

While necessary, the elements of protected activity and adverse employment action are not sufficient; there must also be a causal link between them. That is, the employer must have taken the adverse action because the plaintiff engaged in protected activity. Dowe v. Total Action Against Poverty In Roanoke Valley, 145 F.3d 653, 656-57 (4th Cir. 1998).

### 1. Retaliation for Conduct Pre-Dating Plaintiff's EEO Complaint

Plaintiff alleges that she "was given zeros in many categories" during the selection process for the Financial Administrative Assistant #2 vacancy. Am. Compl. ¶ 20. Plaintiff attributes this treatment to "retaliation." Id. Plaintiff attaches a copy of her rating form, which is signed by five individuals and dated December 15, 2011. Id. at 41.

Plaintiff's allegations, however, fail to establish a causal link between her protected activity and this alleged retaliation. The first date Plaintiff alleges that she communicated a complaint of any kind based on racial discrimination was January 9, 2012, when she contacted her union president. Id. ¶ 17. Her formal EEO complaint was not filed until May 15, 2012. Id. ¶ 25.[4]

---

[4] While Plaintiff alleges that she made various inquiries with human resources when she did not receive the earlier positions, she does not allege that she made any type of complaint to human

13

Even assuming that her communication with the union president would constitute protected activity, it cannot support Plaintiff's retaliation claim as the communication was made almost a month <u>after</u> Plaintiff's December 15, 2011 rating was created. Id. ¶ 20. That is, Defendant cannot have retaliated against Plaintiff in December for a communication that was not made by her until the following month. See <u>Dowe</u>, 145 F.3d at 657 ("[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

### 2. Retaliation for Conduct Post-Dating Plaintiff's EEO Complaint

Plaintiff also alleges that she suffered retaliation after her EEO complaint was filed. Am. Compl. ¶ 33. These allegations include that she was denied a pay increase, that response to her FOIA request was delayed and she was asked to pay $1,963 for responsive documents, and that she was not appropriately recognized during her retirement. Id.

Even if "a reasonable employee would have found the[se] challenged action[s] materially adverse," <u>Burlington</u>, 548 U.S. at 68, Plaintiff's retaliation claim remains deficient as Plaintiff has failed to plead facts from which the Court can infer a causal link between the protected activity and challenged actions.

Where, as here, there is an absence of direct evidence of a retaliatory motive, such a motive may be inferred when the time period between the protected activity and adverse

---

resources that racial discrimination was a factor in those decisions. See Am. Compl. ¶ 16.a. (complaint to human resources on March 8, 2011 that Plaintiff was not "a 730 candidate"); ¶ 16.b; (human resources refused to provide information on who was selected for the Supervisory Program Specialist position or how Plaintiff was rated); ¶ 16.c (Plaintiff was denied the test score results for the Program Specialist position).

action is close.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  A three-or four-month lapse between protected activities and discharge has been deemed too long to establish a causal connection based on temporal proximity alone.  Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (citing Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. App'x 229, 233 (4th Cir. 2006)).  A ten-week gap is long enough that it significantly weakens the inference of causation between the protected activities and discharge.  Id. (citing King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003)).

In this case, the protected activity Plaintiff cites--the filing of her EEO complaint--occurred on May 15, 2012.  Am. Compl. ¶ 25.  The challenged actions did not take place until much later.

With respect to the denial of her increased pay, emails submitted by Plaintiff in which her supervisor supports an increase in pay are dated April 1, 2013 through April 27, 2013.  Id. at 42. A decision regarding Plaintiff's pay increase presumably occurred after those emails, which means it took place over a year after the filing of her EEO complaint on May 15, 2012, id. ¶ 25.

Similarly, Plaintiff's three FOIA requests, as referenced by a letter from FOIA Officer Dana Padgett, dated October 7, 2013, were apparently submitted between June 7, 2013 and October 3, 2013, id. at 44-45, which was well over a year after the filing of Plaintiff's EEO complaint.

Finally, Plaintiff identifies her retirement date as October 4, 2013.  Id. ¶ 7.  Decisions about how or whether to recognize Plainitiff's retirement likely occurred close to that time, again well over a year after her complaint was filed.

15

Additionally, to demonstrate causation, a plaintiff must show that the decisionmaker was aware of the protected activity. See Dowe, 145 F.3d at 658 ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish the third element of the prima facie case."); see also Baqir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006) (holding that the plaintiff failed to establish causation where the evidence did not show that the decisionmaker was aware of the alleged protected activity at the time it acted).

Plaintiff's allegations do not indicate that any of the relevant decisionmakers were aware of Plaintiff's EEO complaint. See Am. Compl. While Plaintiff does allege that Glover knew of her EEO complaint, as he participated in an attempted mediation, id. ¶ 33, Plaintiff does not allege that Glover was involved in the decision to deny her pay raise, the processing of her FOIA requests, or the decisions regarding how her retirement would be handled. The decisionmakers for these issues were Jason Atkins, Maria Pagan, Dana Padgett, Victor Cruz, and Robin Ball. Id.

## V. Conclusion

Based on the foregoing, it is hereby recommended:

1) That Defendant's Partial Motion to Dismiss (Doc. 13) be **GRANTED** and that

    a. Plaintiff's failure to promote claims as to the positions of Financial Administrative Assistant #1, Supervisory Program Specialist, and Program Specialist be dismissed **WITHOUT PREJUDICE** and that

    b. Plaintiff's retaliation claim should be dismissed **WITH PREJUDICE**,

and,

2) That Plaintiff's failure to promote claim with respect to the position of Financial Administrative Assistant #2 remain pending.

Signed: February 22, 2019

W. Carleton Metcalf
United States Magistrate Judge

### **Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).